**FILED**
U.S. District Court
District of Kansas

3/30/2021

Clerk, U.S. District Court
By_____AA_____Deputy Clerk

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Kansas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No.   21 - 6034 - GEB
A DELL LAPTOP, SN 4JLZNF2, SANDISK USB/USBC )
COMBO STORAGE DEVICE, AND OTHER DEVICES, )
all as described in Attachment A )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A DELL LAPTOP, SN 4JLZNF2, SANDISK USB/USBC COMBO STORAGE DEVICE, AND OTHER DEVICES, all as further described in Attachment A,

located in the _____ District of _____Kansas_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    x evidence of a crime;

    x contraband, fruits of crime, or other items illegally possessed;

    x property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2251 | Production of Child Pornography |
| 18 U.S.C. 2252/2252A | Offenses relating to the Possession/Distribution of Child Pornography |
| 18 U.S.C. 2423(b) | Travel to engage in Illicit Sexual Activity |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
    under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

KASEV SUNDAR, SA, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/30/2021

*Judge's signature*

City and state: Wichita, KS    The Honorable Gwynne E. Birzer, US Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>A DELL LAPTOP, SN 4JLZNF2, SANDISK USB/USBC COMBO STORAGE DEVICE, AND OTHER DEVICES, ALL AS FURTHER DESCRIBED IN ATTACHMENT A, LOCATED AT 1211 S. EMPORIA, WICHITA, KANSAS 67211 | Case No. 21-6034-GEB |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Kasev R. Sundar, Special Agent of Federal Bureau of Investigation, being duly sworn, do hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation and have been since January 8, 2021. As a Special Agent of the FBI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States, including violations of Title 18, United States Code § § 2252 and 2252A. Before becoming a Special Agent for the FBI, I was an Army Officer on Active Duty. One of my additional duties during my Active Duty time was conducting non-judicial military investigations into actions that violated military policies such as negligent discharges of firearms, vehicle safety violations, and workplace accidents resulting in injuries. I have received training on conducting a wide variety of criminal investigations, to include organized crime, drug trafficking, human trafficking, crimes against children, major theft, and other federal

crimes. I have also received training on the preparation and execution of search warrants. I am currently conducting criminal investigations on multiple subjects.

2. As a special agent of FBI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States, including violations of Title 18, United States Code §2251, 2252 and 2252A, and 2423.

3. As will be shown below, there is probable cause to believe that Michael J. Taylor (TAYLOR) has used multiple computer devices to produce, transport, distribute, receive, and possess child pornography, in violation of 18 U.S.C. §§ 2251, 2252 and 2252A, and to facilitate and prepare for travel in interstate commerce to engage in illicit sexual activity, in violation of 18 U.S.C. § 2423(b). I submit this application and affidavit in support of a search warrant authorizing the search of devices found in the possession of TAYLOR, further described in Attachment A. I seek authorization to examine the device to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, which relate to the knowing production, transportation, shipment, receipt, distribution, and possession of child pornography, as well as interstate travel to engage in illicit sexual activity, as further described in Attachment B.

4. The information in this affidavit has been communicated to me by other law enforcement investigators and witnesses involved in this investigation, as outlined below. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included each and every fact known to me or other investigators concerning this investigation. Instead, I have set forth only those facts that I believe are necessary to establish the existence of probable cause to support a search warrant.

## DEFINITIONS

5.  The following definitions apply to this Affidavit and Attachment B:

    a.  ***"Child Pornography"*** includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

    b.  ***"Minor"*** means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

    c.  ***"Sexually explicit conduct"*** applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8) (A), or that have been created, adapted, or modified to appear to depict an identifiable minor, *see* 18 U.S.C. § 2256(8) (C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2) (A).

    d.  ***"Visual depictions"*** include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

    e.  ***"Child Erotica"*** means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

    f.  ***"Computer"*** refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e) (1). This includes devices commonly known as laptops, desktops, netbooks, personal digital assistants, and smartphones, but is not limited to those devices.

    g.  ***"Internet Protocol address"*** or "IP address" refers to a unique number used by a computer to access the Internet.

## INVESTIGATION/PROBABLE CAUSE

6. On March 23, 2021, K.T. contacted Wichita State University Police Department in reference to her attempting to locate Minor Victim 1 (15 yr. old b/f born in 2005), who had not returned to her residence.

7. K.T. had found the cellphone of Minor Victim 1 hidden under Minor Victim 1's bed at the residence. K.T. found a picture of Minor Victim 1 with an adult male on the phone.

8. K.T. used the "locate my device" application to determine the location of Minor Victim 1's MacBook. The location of the MacBook was showing at 4703 E. 19th St. N., Wichita, Kansas, 67208.  This address is to the Hyatt Place, which is on Wichita State University property.

9. K.T. contacted WSU police, provided them the picture of the male with Minor Victim 1. WSU police learned from Hyatt Place staff that the male had been seen at the hotel, and identified the room for the male as #432.

10. When WSU Police Officers knocked on the door of Room 432, Michael J. Taylor (TAYLOR), a 46 year old man, answered the door in his "boxer shorts." TAYLOR advised he was there with a female he met online. TAYLOR allowed an officer to enter the room, where the officer found 15 year old Minor Victim 1 getting dressed.

11. TAYLOR and Minor Victim 1 were separated and transported to the Child Advocacy Center (CAC) where they were interviewed.

12. While in the hotel room, WSU officers observed two laptops (later identified as a black Lenovo laptop and a smaller black Dell laptop) in plain view, with the larger (Lenovo) laptop on the table next to the couch and the smaller (Dell) laptop on a table near the kitchen area of the hotel room. Two Android smartphones (later identified as a Samsung Note and a Samsung Galaxy S Plus) also observed in plainview near the area where the

laptops were observed. WSU officers secured these devices for transport to the CAC, but did not examine them. A WSU police was left at the room to secure the room.

### Minor Victim 1's interview

13. In her interview. Minor Victim 1 stated she met TAYLOR in the on-line chat website "Omegle" early in the school year of 2020-2021, and moved their chat conversations to Instagram and Skype shortly after meeting on Omegle. Minor Victim 1 specifically identified the date of November 8, 2020 as the date she and TAYLOR considered the start of their "dating" relationship. Minor Victim 1 would have been 14 years of age at that time and they "chatted" about sex acts in which Minor Victim 1 eventually agreed to engage. Minor Victim 1 reported she told TAYLOR she was 15 to 17 years old, but could not remember exactly which age she told him.

14. Minor Victim 1 used her cell phone and computer to access Skype and Instagram to communicate with TAYLOR, during which she would send TAYLOR nude photographs of herself and videos of her touching herself in a sexual manner. During these communications, TAYLOR also made plans to travel from Ohio to meet Minor Victim 1 to engage in sex acts.

15. On March 22, 2021, Minor Victim 1 met TAYLOR at the YMCA on Wichita State University campus after he flew from Ohio to Wichita, Kansas. They discussed how Minor Victim 1 would get out of the house, and arranged to meet again on March 23, 2021 to have sex.

16. Sometime prior to this meeting, TAYLOR had purchased a SIM card and cellphone to give to Minor Victim 1. Along with this phone, TAYLOR also provided Minor Victim 1 other gifts including a Donald Duck stuff animal. As Minor Victim 1 explained, the

phone with SIM card was so they could remain in communication without being detected by her mother.

17. On March 23, 2021, Minor Victim 1 rode her bike to the Hyatt Place where she met with TAYLOR. TAYLOR took Minor Victim 1's bike up to Room 432, and then engaged Minor Victim 1 in sexual intercourse and oral sex.

### Interview of Michael J. TAYLOR

18. At the CAC, TAYLOR reviewed and signed a waiver for search/examination of the two smartphones from the hotel room. TAYLOR said the phone with his ID and credit cards was his and the other was a phone he brought to give to M.T. TAYLOR provided pin and passcodes for the devices.

19. After advice and waiver of Miranda Rights, TAYLOR stated he met Minor Victim 1 on Omegle in September of 2020. He acknowledged the conversations were sexual in nature and took place on Skype and Instagram as well.

20. TAYLOR said his Skype account is eradicusprime@gmail.com or his phone number 1-239-898-1486. TAYLOR advised he used his phone to access Skype.

21. TAYLOR also advised he used another email account, mjpt74@gmail.com, to do booking of his hotel as well as rides via Uber and Lyft.

22. TAYLOR advised Minor Victim 1 initially said she was 19 years old but then said she was 15 years of age. TAYLOR claimed he took this as "role-playing," but also advised he knew there were flags about her real age.

23. TAYLOR admitted to receiving and retaining nude depictions of Minor Victim 1, and that he had taken "screenshots" of Minor Victim 1 during their Skype sessions. TAYLOR advised he had saved those depictions to a thumbdrive that he brought with him from

Ohio. TAYLOR explained he used that thumbdrive to transfer those depictions to the phone which he intended to give to Minor Victim 1 (indicating the thumbdrive was capable of connecting directly to the phone).

24. TAYLOR explained he flew from Ohio to Wichita, Kansas on March 22, 2021, on American Airlines, bringing a sex toy with him from Ohio, as well as a Samsung Galaxy S Plus cellphone, and a thumbdrive containing pornographic depictions of Minor Victim 1. Once in Wichita, he purchased other items, including a SIM card for the phone and a vibrator, that he intended to give to Minor Victim 1.

25. For the Samsung Galaxy S Plus cellphone, TAYLOR explained he created a Google account to associate with the phone, which he identified as tittlemehard@gmail.com. He explained that, while in Wichita, he used a thumbdrive to transfer the pornographic depictions of Minor Victim 1 to the Samsung Galaxy S Plus and that the files were also uploaded to the Google account associated with the phone.

26. TAYLOR admitted to engaging in sex acts with Minor Victim 1 on March 23, 2021 in his Hyatt Place hotel room.

27. TAYLOR also signed a waiver /consent for search of:

   a. the Samsung Galaxy S Plus smartphone;

   b. the hotel room (#432 at Hyatt Place); and

   c. the Lenovo Laptop.

28. TAYLOR declined to sign a waiver/consent for search of the Dell laptop.

**Search of Room 432**

29. Search of TAYLOR's hotel room revealed handcuffs, an empty box for a Oana Minx vibrator, an empty box for a Lush 3 Lovense vibrator, a box of Trojan condoms

containing opened wrappers and 9 unopened condoms, and a number of other items discussed in TAYLOR's interview. The search also revealed more than twenty digital storage devices, listed in Attachment A, in a black bag on the kitchen island.

30. Cursory physical examination of the USB devices showed two devices (a black and silver SanDisk USB/USBC Combo, and a black and light blue Stellar XT 64GB USB/Android combo) appeared capable of connecting to both a conventional computer or laptop as well as an Android smartphone.

### Examination of Samsung Galaxy S Plus phone

31. Detective Ray Alverson conducted a forensic search of the Samsung Galaxy S Plus and, as a sample, found the following depictions:

    a. Image (identified by last four of title 02E-1.jpg) depicting Minor Victim 1 inserting two fingers into her exposed vagina;

    b. Image (identified by last four of title 98Z-1.jpg) depicting Minor Victim 1, from behind, posed in what appears to be a short plaid skirt without underwear, bent over with the skirt hiked up to expose her vagina, which is the apparent focus of the depiction; and

    c. Image (identified by the last four of title 2e1-1.jpg) depicting Minor Victim 1, from behind, posed on her hands and knees, wearing no clothing, in front of a mirror.

32. Also found on the phone were other images, co-located with the above depictions, showing Minor Victim 1's face, hands, and upper torso in states of undress. These identifiable depictions appear consistent to the female shown in the images listed in the preceding paragraph appear, i.e., Minor Victim 1.

33. On Mach 25, 2021, the depictions listed in paragraph 31(a) and (b) above were presented to Minor Victim 1, who identified herself as the subject in the images. The depiction listed in paragraph 31(c) was not presented to Minor Victim 1, as she had previously seen the images on the phone and advised they depicted her.

## CHARACTERISTICS OF CHILD PORNOGRAPHERS

34. From conversation with experienced investigators, including those at the Kansas ICAC, I have learned the following regarding child pornography offenders:

   a. The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature. In this investigation, TAYLOR has exhibited an interest in the sexual exploitation of children. He advised Minor Victim 1 told him she was 15 years old and the defendant persisted in sexualized communication, including receiving and screen capturing images of the minor engaged in sexually explicit conduct. His communications indicate he receives sexual gratification from child exploitation material, and that his interest is persistent given the length of time he engaged Minor Victim 1 in such communications.

   b. The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children. In this investigation, TAYLOR retained images of Minor Victim 1, stored them, and transferred them to another device and into cloud storage.

   c. The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based mediums used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles. Frequently, multiple mediums will be used. In this investigation, TAYLOR is known to have used multiple mediums, including email, social networking, instant messaging, and online storage, as part of the exploitation of Minor Victim 1.

   d. The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. In this investigation, TAYLOR has demonstrated his desire to maintain access to child pornography, not least by bringing it with him to Kansas but also by creating an online account, for which he maintained access and control, to store the images. TAYLOR also kept a large number of storage

       devices (referenced above and listed in Attachment A) commingled in a black bag, which he brought from Ohio.

    e.    The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

35. Affiant asserts that, because of the many characteristics which TAYLOR manifests (discussed above), the device(s) in his possession, including the laptop and storage devices, are likely to contain evidence of his persistent interest in child exploitation and child pornography, contacts with minors or like-minded offenders, plans or research into the commission of the offenses at issue, and operation of the involved accounts, all of which would be relevant to the crimes under investigation.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

36. As described above and in Attachment B, this application seeks permission to search for evidence of the crimes under investigation that might be found on the devices identified above and described in Attachment A, in the form of data and information contained on the devices. Thus, the warrant applied for would authorizes examination of the devices for electronically stored information, either here in Wichita or through an assisting agency located elsewhere in the United States, all under Rule 41(e)(2)(B).

37. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.

This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.

38. As further described in Attachment B, this application seeks permission to search the devices which may have been used in the commission of the crimes under investigation and to examine those devices to locate: a) computer files that might serve as direct evidence of the crimes described on the warrant, and b) forensic electronic evidence that establishes how the devices were used, the purpose of their use, who used them, and when.

39. Information stored within electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. There is probable cause to believe that this forensic electronic evidence (relating to the who, when, and how of the device's use) will be on any storage medium because:

   a. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Put into context in this case, because the USB flashdrives are capable of being used on the laptop computers in Taylor's possession, the contents of the USB flashdrives may complete the picture of how either or both computers were used, by whom, and when for what purpose.

   b. Information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.

      This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. Additionally, some information stored within electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a device may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the user.

    d. Information stored within a device may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, a saved webpage explaining how to download material may indicate criminal planning. Similarly, an executable file for a "wiping" program to destroy evidence may reveal consciousness of guilt. Folder tiles or organizational structures may also reveal the user's awareness of the criminal nature of content.

40. A person with appropriate familiarity with how a computer/device works can, after examining this forensic evidence in its proper context, draw conclusions about how the computer or device was used, the purpose of such use, who used them, and when. The process of identifying the exact files and other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer or other storage device is evidence may depend on other information stored on another device and the application of knowledge about how that device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

41. Further, in finding evidence of how a computer or device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is <u>not</u> present on a storage medium. For example, the presence or absence of counter-

forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

42. As noted above, not all evidence takes the form of documents and files that can be easily viewed. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence, and may require examination by assisting authorities at an offsite laboratory. Reviewing devices information for things described in the warrant can take weeks or months, depending on the volume of data stored.

43. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. This is true even for smartphone devices, which may require different forensic tools to access the content contained in the smartphone depending on the age or model of device. Therefore, it is possible that searching these computer devices may require tools or knowledge that might not be present at the search site (the Kansas ICAC), and may require review and examination in an off-site controlled environment (such as the Heart of America Regional Computer Forensics Laboratory, located in Kansas City, Missouri) with the proper tools and knowledge.

44. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The

later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

45. Based on the foregoing facts, there is probable cause to believe Michael J. Taylor (TAYLOR) has used multiple computer devices to produce, transport, distribute, receive, and possess child pornography, in violation of 18 U.S.C. §§ 2251, 2252 and 2252A, and to facilitate and prepare for travel in interstate commerce to engage in illicit sexual activity, in violation of 18 U.S.C. § 2423(b). There is probable cause to believe Michael J. Taylor has used and accessed multiple Google email accounts, as well as the social media platforms of Omegle, Skype, and Instagram to facilitate these criminal activities, and has accessed these accounts using multiple mobile devices. Further, there is probable cause to believe Michael J. Taylor has done so over an extended period of time and the various computer devices and storage devices in his possession, listed in Attachment A, have been used to access to the accounts discussed herein. Based on these facts, I submit the computer devices and storage devices found in his possession will likely contain evidence of his, and others, child pornography activities.

46. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the devices described above and listed in Attachment A have been involved in the crimes articulated above. I respectfully submit that there is probable cause to believe that user of the devices, Michael J. Taylor, has violated 18 U.S.C. §§ 2251, 2252 and 2252A, and 2423(b) and that evidence of those criminal offenses will be located on the devices described above. Further, I submit that such

evidence, listed in Attachment B to this affidavit, constitutes contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

47. Therefore, I respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

*[signature]*
Kasev R. Sundar
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me in my presence on this 30th day of March, 2021.

*[signature]*
THE HONORABLE GWYNNE E. BIRZER
United States Magistrate Judge

# ATTACHMENT A

### Description of Device to Searched/Examined

Dell laptop, SN 4JLZNF2
SanDisk USB/USBC Combo black and silver, SN BQ1708258312 SDDDC2
Stellar XT 64GB USB/Android combo, black and light blue
SanDisk 32GB, black and red,
Dynex 9G27 mini memory card reader/writer
Silver flashdrive labeled "our wedding"
Black RiDATA flashdrive
Lexar by Micron 16G white and gray flashdrive
Samsung 128 USB 3.0 flashdrive
Red/Silver flashdrive (unknown brand)
Black Xbox flashdrive
Gray wolf flashdrive
4 MicroSD cards (1 Lexar 4 GB, 1 Samsung 64GB, Transcend 8GB, 1 Transcend 1GB)
3 Canon SD cards (1 32M, 2 16M)
4 SD Cards (1 Kingston 1.0 GB, 1 Kingston 512 MB, 1 Transcend 8GB, 1 SanDisk 8GB)
7 SD Adapters (5 Samsung, 1 transcend, 1 mimiSD)
2 Memory sticks (1 Lexar Media 32 GB, 1 Sony 128 MB)
Galaxy Tab OTG Connection

CURRENTLY LOCATED AT 1211 S. EMPORIA, WICHITA, KANSAS 67211

# ATTACHMENT B

## Particular Things to be seized

1. Evidence relating to violations of 18 U.S.C. § § 2251, 2252 and 2252A, commonly known as the production, distribution, receipt, possession or access of child pornography. This includes but is not limited to child pornography, messaging about child pornography or child sexual exploitation, and browser history related to child pornography or an interest in child sexual exploitation.

2. Evidence relating to violation of 18 U.S.C. § 2423(b), commonly known as travel with intent to engage in illicit sexual conduct. This includes but is not limited to messaging, browser history, maps, receipts, itineraries, and account information.

3. Evidence of the use/access of the social media platforms and accounts, referenced in the attached affidavit and known to law enforcement.

4. Evidence of the use/access of the email accounts, referenced in the attached affidavit and known to law enforcement.

5. Any and all visual depictions of minors, and any information that may identify those minors depicted engaged in sexually explicit conduct.

6. Evidence showing who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, connection logs, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, social media profiles, photographs, and correspondence.

7. Evidence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software or evidence of the lack of such malicious software.

8. Evidence indicating how and when the device was accessed or used to determine the chronological context of devices access, use, and events relating to the crime(s) under investigation and to the user.

9. Evidence indicating the device user's knowledge and/or intent as it relates to the crime(s) under investigation.

10. Passwords and encryption keys that may be necessary to access the device or its storage.

11. Records of or information about the device's Internet activity, including browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses, which may relate to the identified crimes.

12. Contextual information necessary to understand the evidence described in this attachment.